**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | :  |
| | :   3:17-CR-131 |
| **v.** | : |
| | :   (JUDGE MANNION) |
| **PATRICK SUTHERLAND,** | : |
| **Defendant** | : |

## **MEMORANDUM**

**I.    BACKGROUND**

On May 11, 2020, defendant Patrick Sutherland, an inmate at FCI-Danbury, Connecticut, filed, *pro se*, a letter Motion for Appointment of Counsel and a Motion for Compassionate Release, seemingly under 18 U.S.C. §3582(c)(1)(A), requesting a recalculation of his sentence computation by the BOP related to his 46-month prison sentence, as well as his immediate transfer to home confinement due to the COVID-19 pandemic. Defendant alleges that "in FCI Danbury we have the highest cases of COVID-19 [and that] me being exposed to this virus can be deadly being that I have high blood pressure." As such, he requests the court to release him to home confinement to serve the remainder of his prison sentence.

Defendant alleges that the BOP has incorrectly computed his sentence and seeks the court to direct the BOP to change his sentence computation to be 3 years and 10 months. Specifically, Sutherland alleges that his prison

sentence is "a term of 3 years and 10 months" but the BOP incorrectly "has [him] doing 4 years and 1 month." The court construes defendant's second request pertaining to his sentence computation by the BOP as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. (Doc. 171).[1] Defendant also seeks the court to appoint him counsel so that he can challenge the BOP's computation of his sentence.

Sutherland also requests the court to alter his sentence and to immediately release him from confinement in prison at FCI-Danbury to home confinement "to serve the remainder of [his] sentence" due to his fear that he may contract the COVID-19 virus in the prison. Sutherland alleges that "in FCI-Danbury we have the highest cases of COVID-19" and that "[his] being exposed to this virus can be deadly being that [he has] high blood pressure."[2] He further states that "with the spread of the virus time is against [him]."

---

[1]The court notes that although defendant does not cite to any statutory basis for his motion, the court finds his filing seeking release from prison to home confinement is a motion under §3582(c)(1)(A) against the government, and properly filed in his criminal case. Insofar as defendant challenges the BOP's computation of his sentence, his motion is a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. Thus, to this extent, defendant is actually the petitioner, and the proper respondent is Warden Easter at FCI-Danbury. See 28 U.S.C. §2243. "The writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004). Also, defendant must file his habeas petition with the district court where he is confined.

[2]The court notes that it considered defendant's physical condition stated in his PSR, (Doc. 156 at 12-13), which reflects that he is 31 years old

2

In his motion, (Doc. 171 at 2), defendant also represents that he has exhausted all of his BOP administrative remedies.

On May 12, 2020, defendant filed another letter repeating his allegation that the BOP incorrectly calculated his prison term to be 4 years, 1 month and 19 days despite the fact that this court sentenced him to a prison term of 3 years and 10 months to run concurrent with his sentence imposed by the District Court for the Eastern District of New York. (Doc. 173). Defendant also again requests the court to transfer him to home confinement due to COVID-19 and his alleged high blood pressure. He further states that he was schedule to be released to a halfway house on June 9, 2020, for 6 months,

---

and that he did not have any indicated medical conditions. He also reported that he was in "good physical health." Nor was it noted that defendant was taking any medication. The government also submitted defendant's numerous BOP medical records from 2017 through 2020. (Doc. 176). As the government points out in its brief, (Doc. 178 at 3-4): "a review of [Sutherland's] attached BOP medical records show that he has no history of high blood pressure, does not treat for the same, nor take medications related to high blood pressure. The medical conditions noted in the reports include: (1) alcohol use disorder: sever; (2) opioid use disorder: moderate; (3) mononeuropathy of upper limb; (4) impacted cerumen; (5) acute respiratory infection, unspecified; (6) unspecified hemorrhoids; (7) pain, unspecified; (8) sprain of unspecified parts of lumbar spine and pelvis; (9) crushing injury of part(s) of wrist, and fingers; and (10) body mass index (BMI) 36.0-36.9, adult. This list of aliments includes medical conditions treated over the course of Sutherland's incarceration, many of which have resolved and none of which seemingly increase his risk to COVID-19 with the possible exception of being overweight."

The government also indicates that "Sutherland was tested for COVID-19 on May 15, 2020, with negative results." (Id. at 4).

3

and that his home detention eligibility date is July 8, 2020. Defendant also states that his Reentry Plan has already been approved by the probation department. He further repeats that he has exhausted all of his BOP administrative remedies. Defendant attached a copy of his BOP Sentence Computation Data as well as his Individualized Reentry Plan. Defendant's BOP projected release date from prion is December 5, 2020.

The court directed the government to respond to Sutherland's motion on May 13, 2020. (Doc. 172). On May 18 and 19, 2020, the government filed its brief in opposition with an attached Exhibit, namely, the Declaration of Warden Easter filed in an unrelated inmate class action against the BOP pending in the District Court for Connecticut, regarding the response of the BOP to COVID-19 at FCI-Danbury and its camps, as well as the BOP's implementation of Attorney General Barr's memoranda issued with respect to the CARES Act, (Docs. 178 & 178-1). The government separately filed Exhibits under Seal which pertain to defendant's BOP medical records from 2017 through 2020. (Doc. 176).

On May 28, 2020, defendant filed a letter, construed as his reply brief, in which he states that he filed two "cop-outs", i.e., Inmate Requests to Staff, in which he sought his immediate release from prison to home confinement under the CARES Act due to COVID-19. In his reply brief, defendant also alleges that the prison population has grown to capacity and that he cannot perform social distancing making it harder for him to protect himself from the virus. He attached a copy of his May 3, 2020 Inmate Request to Warden

Easter with a May 12, 2020 response from a staff member, whose signature is illegible, denying defendant's request stating that "[he is] ineligible for HC [home confinement] since [he is] a 'low' pattern score." Defendant also attached a copy of his May 12, 2020 Inmate Request to Case Manager Lessard again requesting that he be considered for home confinement. On May 13, 2020, defendant received a response from a staff member, whose signature is illegible, denying defendant's request stating that "under the current criteria, you are ineligible [for home confinement] if you are in a low pattern zone."

Further, on June 4, 2020, Sutherland's fiancé Samantha McCrae wrote a letter to the court stating that she needs assistance from defendant in raising their three children and that she fears "the conditions in [FCI Danbury] will not keep him safe from contracting the COVID-19." (Doc. 180). As such, Ms. McCrae requests the court to change Sutherland's prison sentence to time served and return him home with her.

On June 5, 2020, despite the rule allowing only one reply brief, Sutherland filed another reply brief with copies of his BOP medical records attached as exhibits. (Docs. 181, 181-1). Sutherland alleges that one inmate in his housing unit recently has tested positive for COVID-19, that he was exposed to this inmate, and that the unit has not been properly cleaned. He also contends that his medical conditions put him at higher risk of suffering severe complications if he contracts the virus, and that the BOP still has not

5

corrected his sentence computation which he claims requires him to serve a longer sentence than the court imposed.

Insofar as Sutherland requests the court to direct the BOP to correct his sentence computation, his motion is properly construed as a habeas petition under §2241. *See* Harris v. BOP, 787 F.Supp.2d 350, 355-56 (WD.Pa. April 4, 2011). To the extent that the court construes defendant's motion challenging the BOP's computation of his sentence as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, it will dismiss it without prejudice to file it in the District of Connecticut, where habeas jurisdiction properly arises.[3]

To the extent Sutherland requests the court to direct the BOP to release him from prison to home confinement, the court construes defendant's filing as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), and it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies.

To the extent defendant is deemed as seeking the court to order the BOP to find him eligible for immediate home confinement designation under

---

[3] "There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. §2241." Furando v. Ortiz, 2020 WL 1922357, *3 (D.N.J. April 21, 2020) (citing Callwood v. Enos, 230 F.3d 627, 633-34 (3d Cir. 2000)). Even though it appears that defendant has not exhausted all of his administrative remedies available with the BOP regarding his habeas claim challenging the BOP's computation of his sentence, the court will leave it up to the District Court that has jurisdiction over his petition to decide whether exhaustion was completed.

the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[4]

## II. DISCUSSION[5]

In his present filings, (Docs. 171, 173 & 179), defendant initially challenges the BOP's computation of his sentence and seemingly requests the court to direct the BOP to change it to reflect that his prison sentence should be 3 years and 10 months as opposed the BOP's determination of 4 years and 1 month. The court construes defendant's instant filing to the extent he requests the court to correct the BOP's computation of his sentence as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. No doubt that a habeas petition under §2241 is the proper vehicle for an inmate to challenge "the fact or length of confinement", Presser v. Rodriguez, 411 U.S. 475, 494 (1973), or the "execution" of his confinement. Woodall v.

---

[4]Since defendant is proceeding *pro se*, the court liberally construes his motion as also seeking relief pursuant to the CARES Act in addition to a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). In fact, the defendant refers to the CARES Act in his filings requesting the BOP to release him to home confinement due to COVID-19.

[5]Defendant is currently serving a 46-month prison sentence, to run concurrent to his prison sentence imposed in the Eastern District of New York, that was imposed by this court on November 27, 2018, after he pled guilty to bank fraud, aid and abet, 18 U.S.C. §1344 and 2. Defendant was also ordered to be on 3-years of supervised release following the service of his prison sentence. (Doc. 163).

Fed. BOP, 432 F.3d 235, 241-42 (3d Cir. 2005). As mentioned, this request clearly must be presented in a 2241 habeas petition filed in the district where defendant is confined. *See* Harris, *supra*.

Insofar as defendant seeks his immediate transfer from FCI-Danbury to home confinement and requests the court to allow him to serve the remainder of his 46-month prison sentence in home confinement due to the COVID-19 pandemic, the court construes his filings as a motion compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). Defendant states that he is in danger of contracting the virus since the prison has "the highest cases", is filled to capacity and he cannot practice social distancing, and that if he contracts the virus he will be a greater risk of suffering severe complications due to his alleged high blood pressure. Based on these allegations, defendant appears to contend that there exists extraordinary and compelling circumstances warranting his release from prison to home confinement.[6]

In its brief in opposition, the government states that defendant's request for compassionate release from prison to home confinement under

---

[6] Since the government included in its response all of the safety measures implemented by the BOP in response to the COVID-19 virus, (Doc. 178 & Doc. 178-1), since this court is well-aware of all of the safety measures implemented by the BOP, *see* Cordaro, 2020 WL 2084960, and since many of the measures are found on the BOP's website, they are not repeated. *See also* BOP website: www.bop.gov/coronavirus/index.jsp.

Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/.

the First Step Act, 18 U.S.C. §3582(c)(1)(A), should be dismissed because the defendant has not exhausted his administrative remedies, despite his contention that he did, since "[a]ccording to BOP records [], Sutherland has not requested compassionate release in accord with the First Step Act." As such, the government asserts that the court lacks jurisdiction over Sutherland's motion, and essentially, that it should be dismissed without prejudice since it is premature. (Doc. 17 at 6-7).

The government contends that insofar as defendant is seeking relief under the CARES Act "the determination of placement for service of sentence [of a defendant] is the exclusive province of the [Federal Bureau of Prisons ("BOP")] and this Court lacks jurisdiction to intervene." (Id. at 7). Thus, it basically contends that the court lacks the authority to grant Sutherland the relief that he is seeking under the CRAES Act.

The court concurs with the government regarding its above two stated assertions and defendant's motion will be dismissed without prejudice since it is premature due to his failure to exhaust his BOP administrative remedies to the extent it is under the First Step Act, 18 U.S.C. §3582(c)(1)(A). Defendant's motion will be dismissed to the extent it is under the CARES Act since the court does not have the authority to grant defendant relief under the Act.

However, the government also argues in its brief, (Doc. 178 at 18-29), that this court should not additionally construe defendant's motion seeking release from prison due to COVID-19 as a habeas petition under 28 U.S.C.

9

§2241 since it contends that "[w]ithout any allegation that the execution of the defendant's sentence offends the Constitution or otherwise violates federal law, the Court should not recast these motions as habeas corpus petitions as a matter of course." The government recognizes this court's decisions in many recent cases similar to Sutherland's, and notes them in its brief, (Doc. 178 at 19 n. 9), and submits that this analysis is wrong and essentially opposes these decisions insofar as this court has been *sua sponte* construing the defendant's motions as §2241 habeas petitions in addition to motions for compassionate release under §3582(c)(1)(A) and the CARES Act. The government "submits that where the defendant has proffered a specific basis for relief – whether it be for release to home confinement or for a reduction in sentence – the Court should not imply an additional habeas claim where none has been made." (Id. at 24). The government also states that "because Sutherland has not alleged that his designation to the FCI Danbury to serve his sentence conflicts with or violates this Court's sentencing order, he may not challenge the execution of his sentence under §2241, regardless of whether he is seeking release to home confinement or a reduction in his sentence." As such, the government states that the Court should not re-characterize Sutherland's motion as a petition for habeas corpus." (Id. at 28-29).

However, as discussed above, the government is not correct insofar as Sutherland plainly includes a challenge to the BOP's computation of his sentence in his motion and supplements, and claims that the BOP has him

erroneously serving a sentence of 4 years, 1 month and 19 days instead of 3 years and 10 months to which this court sentenced him. He seeks the court to direct the BOP to correct his sentence computation. In fact, Sutherland attached a copy of the BOP's Sentence Computation Data that he is challenging to his filing. This claim and aspect of Sutherland's filings, (Docs. 171 & 173), which the government has apparently overlooked, is clearly a habeas claim under well-established Third Circuit precedence. *See* McKnight v. U.S., 27 F.Supp. 3d 575, 579 (D.N.J. June 25, 2014) (court stated that §2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence, for instance, by raising claims attacking the Bureau of Prisons ("BOP") calculation of his prison term …." (citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (quoting Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001)). Thus, Sutherland's claim challenging the BOP's sentence computation must be asserted as a habeas petition against Warden Easter in the U.S. District Court for the District of Connecticut. See United States v. Figueroa, 349 F. App'x 727, 730 (3d Cir. 2009). This Court has no jurisdiction over defendant's stated habeas claim as he is not detained within this district at the time of the filing of his motion. As such, defendant must file his §2241 habeas claim contesting the BOP's sentence computation in the U.S. District Court for the District of Connecticut since he is confined in prison in that district. Pursuant to 28 U.S.C. §2243, "[t]he writ, or order to show cause shall be directed to the person having custody of the

11

person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004). Thus, for purposes of a habeas action, the petitioner's custodian is the warden of the institution holding the petitioner. *Id.* at 442.

In light of the foregoing, the court will dismiss Sutherland's motion without prejudice to file a §2241 habeas petition in the U.S. District Court for the District of Connecticut to the extent that it challenges the BOP's sentence computation.

To the extent Sutherland's motion is one for compassionate release under §3582(c)(1)(A), the government has indicated that defendant did not exhaust all of his BOP administrative remedies regarding any request with the Warden for home confinement under the FSA due to the COVID-19 virus. Defendant alleges that he did exhaust all of his BOP administrative remedies. Defendant submitted copies of his two Inmate Requests to Staff, (Doc. 179 at 2-3), for support. The first Request is dated May 3, 2020 in which he requested Warden Easter to consider him for home confinement under the CARES Act, with a Staff Member's May 12, 2020 response advising him that he is ineligible. The second Request is dated May 12, 2020 addressed to Case Manager Lessard requesting that he be considered for home confinement since he "meet[s] all required criteria posted on the bulletin board", and the response dated May 13, 2020 stating that he was

12

ineligible under current criteria. However, contrary to Sutherland's assertion, these two Requests for home confinement do not show that he exhausted all of his available BOP administrative remedies as required. As stated, the government represents that the BOP records show that "Sutherland has not requested compassionate release in accord with the First Step Act." (Doc. 178 at 7). Sutherland's exhibits do not controvert this assertion. Nor do they show that he exhausted all of his BOP administrative remedies.

Also, defendant claims that due to the threat that he may contract the COVID-19 virus at FCI-Danbury and based on his underlying high blood pressure, he qualifies to be immediately released to home confinement based on the CARES Act and pursuant to the FSA, 18 U.S.C. §3582(c)(1)(A). "As amended by the First Step Act, 18 U.S.C. §3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Feiling, 2020 WL 1821457, *4 (E.D.Va. April 10, 2020). As mentioned, Sutherland has not filed a request for a sentence reduction pursuant to the First Step Act and he has not exhausted all of his BOP administrative remedies with respect to any request for compassionate release.

As such, defendant's motion for compassionate release must be dismissed for lack of jurisdiction since he has not exhausted his administrative remedies under §3582(c)(1)(A), "which requires that a defendant seeking compassionate release present [his] application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that [his] sentence should be modified, or (2) wait for 30 days to pass." United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020). *See also* United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020) (court held that defendant failed to fully exhaust his administrative remedies with respect to his motion for compassionate release "[b]ecause the Warden explicitly denied his [] request, [defendant] needed to exhaust by appealing the Warden's decision." (citing 28 C.F.R. §542.15(a); B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D. Ky. Mar. 27, 2020) (denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence)); United States v. Edwards, 2020 WL 1987288 (M.D.Tn. April 27, 2020) (Court denied motion for compassionate release without prejudice until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied). Here, as the

14

government represents, Sutherland has not exhausted all of his BOP administrative remedies as required prior to his instant filing.

Secondly, the court cannot yet determine if defendant has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence even though he alleges that the conditions at FCI-Danbury create a high risk that he will contract the COVID-19 virus and that if he does, he will suffer more severe complications based on his alleged high blood pressure, since he has not exhausted his administrative remedies. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence."); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also*

Feiling, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in Raia] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement); Smith, *supra* (same); Edwards, 2020 WL 1987288, *10 n.6 (court noted that the Third Circuit's conclusion in Raia that the exhaustion requirement was "non-waivable" and that the failure to exhaust administrative remedies forecloses compassionate release was not "mere 'dicta'").

Moreover, the Third Circuit in Raia, 954 F.3d at 597, stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *See also* Feiling, 2020 WL 1821457, *7 ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision."); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); United States v. Boyles,

2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); United States v. Wright, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement."); United States v. Edwards, 2020 WL 1987288 (MD.Tn. April 27, 2020) (after an extensive review of recent cases filed in light to the COVID-19 pandemic, the court concluded that "[it] cannot consider the Motion [for compassionate release] until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied", and denied the Motion without prejudice to refiled it once exhaustion was completed); United States v. Johnson, ---F.3d---, 2020 WL 1663360, *6 (D.Md. April 3, 2020) (Court held that since prisoner seeking relief under §3582(c)(1)(A) did not fully exhaust his administrative remedies, it lacked jurisdiction over motion and would not consider whether prisoner presented "extraordinary and compelling reasons" warranting his release from prison until exhaustion was completed).

Thus, defendant's motion for compassionate release must be dismissed for lack of jurisdiction since he has clearly not exhausted all of his administrative remedies under §3582(c)(1)(A).

Additionally, insofar as defendant is construed as relying on the CARES Act, which was signed into law on March 27, 2020, as the basis for his release to home confinement, such reliance is misplaced.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. *See* United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."). In fact, the CARES Act "does not mandate home confinement for

18

any class of inmate." Valenta v. Ortiz, 2020 WL 1814825, *1 (D.N.J. April 9, 2020).

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." Id.

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020,[7] the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). Id. at *3; Cruz, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." Id.; Cordaro, 2020 WL 2084960, *6.

## III.  CONCLUSION

The court will dismiss Sutherland's motion without prejudice to file a §2241 habeas petition in the U.S. District Court for the District of Connecticut

---

[7] See Furando, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

to the extent that it challenges the BOP's sentence computation. Insofar as Sutherland's Motion is for Compassionate Release or for Reduction of Sentence and for Immediate Release to Home Confinement related to the COVID-19 pandemic, **(Doc. 171)**, it will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Finally, insofar as defendant is seeking this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. Since the court is dismissing Sutherland's motion with respect to all of its claims, his motion for appointment of counsel, (Doc. 171), will be denied. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 16, 2020**
17-131-01